937 P.2d 673

Carolyn A. ROSCOE–GILL, a married woman in her sole and separate right, Plaintiff/Appellant,

v.

Charles R. NEWMAN and Bonnie L. Newman, husband and wife; T–Link Ranches, Inc., a Nevada corporation, Defendants/Appellees.

No. 2 CA–CV 96–0140.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 19, 1996.

Review Denied June 5, 1997.

**484**

Aboud & Aboud, P.C. by Michael J. Aboud, Tucson, for Plaintiff/Appellant.

Cochran & Dahl, P.C. by Jerry L. Cochran, Phoenix, for Defendants/Appellees.

## OPINION

PELANDER, Presiding Judge.

The key issue in this case is whether a seller in a real estate sales transaction is bound by and limited to a liquidated damage provision in the parties' contract or instead may avoid the provision and recover from the buyer a greater amount of damages allegedly caused by the latter's breach. After granting summary judgment for the buyer on that issue, the trial court entered a stipulated judgment for the seller, plaintiff/appellant Carolyn Roscoe–Gill, in the amount of the liquidated damages specified in the contract. She appeals from that judgment. For the reasons stated below, we affirm.

We view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff. *Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 840 P.2d 1024 (App.1992). Plaintiff owned a ranch in Greenlee County, Arizona. In September 1994, she entered into a written agreement to sell the ranch to defendants/appellees, Charles Newman (Newman) and his wife, Bonnie. The agreement, which was drafted by plaintiff's attorney, provided for a $380,000 purchase price, $5,000 of which was to be paid as earnest money when escrow opened. The agreement contained the following liquidated damage provision:

> *DEFAULT BY BUYER.* If Buyer defaults hereunder, actual damages to Seller will be difficult to calculate, but Buyer and

Seller agree that the Earnest Money is a reasonable approximation thereof. Accordingly, if Buyer defaults, Seller may terminate this Agreement and Escrow Agent shall pay to Seller the Earnest Money.

On the initial closing date of November 2, 1994, Newman informed plaintiff and her attorney that he could not complete the purchase at that time because he had not received money expected from the sale of his farms in Mexico. Plaintiff and her attorney agreed to extend the closing date to December 7 and negotiated several conditions. The purchase price was increased to $404,000; Newman's corporation, defendant T–Link Ranches, was substituted as buyer; and Newman was to provide a caretaker and properly manage the ranch until the sale closed.

Defendants still were unable to close on December 7, and thereafter plaintiff agreed to extend the closing date two more times. Plaintiff and her attorney consented to and documented each extension in a written agreement. In none of the extensions did plaintiff obtain an agreement to increase the liquidated damages amount. After Newman failed to close on the final, extended date, January 30, 1995, plaintiff declared a breach and terminated the escrow in March 1995. Faced with a pending foreclosure and trustee's sale, plaintiff ultimately sold the ranch under financially pressured circumstances to a new purchaser for $260,000.

Plaintiff filed suit against defendants for breach of contract in April 1995, seeking damages exceeding $140,000.[1] The parties filed cross-motions for summary judgment on the issue of whether the liquidated damages clause limited plaintiff's damages to the $5,000 earnest money deposit. The trial court granted defendants' motion and denied plaintiff's, ruling that "[i]f the liquidated damages clause was to be set aside during the period of extensions, that should have been expressed between the parties." The parties then stipulated to judgment for plain-

---

1. Plaintiff claimed as damages the $120,000 difference between the original sale price of $380,000 and the actual sale price of $260,000, plus $20,000 in interest and lost discounts, $10,000 in additional legal fees, and payments for taking care of the ranch.

tiff in the amount of $5,000, and this appeal followed.

When liquidated damages are specified in a contract, the terms of the contract generally control. *Davis v. Tucson Arizona Boys Choir Soc.*, 137 Ariz. 228, 233, 669 P.2d 1005, 1010 (App.1983); *Roy H. Long Realty Co. v. Vanderkolk*, 26 Ariz.App. 226, 228, 547 P.2d 497, 499 (1976). This court has previously noted that "[a] provision for the forfeiture of earnest money on breach of a contract to purchase real estate has been held a stipulation for liquidated damages." *Lyons v. Philippart*, 140 Ariz. 36, 38, 680 P.2d 172, 174 (App.1983). A contractual clause that fixes an unreasonably large sum of liquidated damages, however, is unenforceable because it is deemed to be a penalty. Restatement (Second) of Contracts § 356 (1981); *Pima Sav. and Loan Ass'n v. Rampello*, 168 Ariz. 297, 299, 812 P.2d 1115, 1117 (App.1991). Plaintiff contends that the liquidated damage amount provided in the subject contract is an unenforceable penalty because it is too low. She relies in part on comment a to § 356 of the Restatement, which provides that "[a] term that fixes an unreasonably small amount of damages may be unenforceable as unconscionable."

There are no Arizona cases directly on point. The Washington Supreme Court, however, has held that a seller in a real estate sales transaction cannot seek to avoid a contractual liquidated damages clause on grounds that it constitutes a penalty because it is too low. *See Mahoney v. Tingley*, 85 Wash.2d 95, 529 P.2d 1068 (1975). As that court stated:

A penalty exists where there is an attempt to enforce an obligation to pay a sum fixed by agreement of the parties as a punishment for the failure to fulfill some primary contractual obligation. In this case, it is not the party in default who seeks relief from an excessively high liquidated damages provision. Rather, the provision operates to limit the recovery of the party who incurred a loss as a result of the other parties' breach. There being no element of punishment involved, it cannot be said that plaintiff is being penalized in any sense.

85 Wash.2d at 98, 529 P.2d at 1070 (citations omitted). The court noted that, in making an earnest money agreement, the seller "can simply demand more protection—a larger deposit of earnest money—or even dispense with a liquidated damages provision altogether." *Id.* at 100, 529 P.2d at 1071. It then concluded that, in the absence of extraordinary circumstances such as fraud by the buyer, "a seller who chooses to utilize the device of liquidated damages in an earnest money agreement, with its attendant features of certainty and reliance upon the limitation, cannot avoid the effect of that agreement." *Id.; cf. Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 259, 846 P.2d 904, 910 (1993). *See generally* Linda A. Francis, Annotation, *Provision in Land Contract for Liquidated Damages Upon Default of Purchaser as Affecting Right of Vendor to Maintain Action for Damages for Breach of Contract*, 39 A.L.R.5th 33 (1996).

We agree with the reasoning and conclusion in *Mahoney*. The principle under which unreasonably excessive liquidated damage clauses are deemed punitive and therefore unenforceable does not apply to liquidated damage provisions that are claimed to be insufficient. The primary purpose of contractual liquidated damage provisions is to avoid the parties having to litigate, and courts or juries having to decide, what would be a fair and reasonable damage award in the event of a breach. *Rampello*, 168 Ariz. at 299, 812 P.2d at 1117. Adopting plaintiff's position would undermine that purpose, unduly infringe on the parties' right to contract, and inject uncertainty into their contractual dealings. We hold that, in the absence of a clear showing by the seller of fraud, duress or unconscionability, liquidated damage provisions are not subject to challenge based on their being inadequate to compensate for damages actually incurred.

Plaintiff presented no evidence to support a claim of unconscionability or fraud on Newman's part, nor did she assert such claims in her complaint or summary judgment motion. Plaintiff emphasizes that Newman continually promised to complete the purchase, consistently expressed a desire to own the ranch, and represented that this

was a "done deal" and that he could obtain financing elsewhere if his money from Mexico did not materialize. According to plaintiff, but for those assurances, she would not have extended the closing date.

Such facts do not support an actionable claim of fraud. *See Staheli v. Kauffman*, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979) (actual fraud cannot be predicated on unfulfilled future promises); *McAlister v. Citibank (Arizona)*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (App.1992). Nor do those facts render the liquidated damage provision unconscionable. *See H.S. Perlin Co., Inc. v. Morse Signal Devices*, 209 Cal.App.3d 1289, 258 Cal. Rptr. 1 (1989); *cf. Maxwell v. Fidelity Fin. Serv., Inc.*, 184 Ariz. 82, 87–91, 907 P.2d 51, 56–60 (1995).

■ Finally, based on Newman's repeated assurances to close on the deal, plaintiff asserts defendants are equitably estopped from using the liquidated damages clause to limit her recovery of actual damages. "Equitable estoppel involves, generally speaking, an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another thereon." *Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 16 Ariz.App. 415, 419, 493 P.2d 1220, 1224 (1972). As noted above, there is no evidence in the record that Newman made affirmative misrepresentations of present fact when he requested extensions of the closing date. Plaintiff could have conditioned the closing date extensions on larger earnest money deposits or the elimination of the liquidated damages provision. *See, e.g., Kendrick v. Alexander*, 844 S.W.2d 187 (Tenn.App.1992) (court upheld $50,000 increase in amount of liquidated damages added in consideration for seller's agreement to several extensions of closing date). We also note that plaintiff's counsel drafted the sale agreement and that, while plaintiff was represented by counsel throughout the parties' negotiations, Newman was not.[2]

In addressing the plaintiff/seller's equitable estoppel argument in *Mahoney*, the Washington court stated:

[The buyers'] request merely tended to confirm their intention to complete the transaction, and plaintiff could rely on nothing more than the defendants' agreement to meet their obligations under the earnest money agreement. Upon defendants' breach of the agreement, the extent of defendants' liability was fixed by the liquidated damages clause. Therefore, the doctrine of equitable estoppel is not applicable in this case.

85 Wash.2d at 101, 529 P.2d at 1072. Similarly, we reject plaintiff's equitable estoppel claim here. We affirm the trial court's judgment and, in our discretion, decline defendants' request for attorney's fees on appeal.

DRUKE, C.J., and LIVERMORE, J., concur.

---

**2.** Plaintiff's counsel during the subject transaction was different than counsel who represents

her in this case.