177 P.3d 1207

## MINING INVESTMENT GROUP, LLC, Plaintiff/Counter–Defendant/Appel-lant/Cross–Appellee,

v.

## Billy V. ROBERTS and Sandra J. Roberts, husband and wife, Defendants/Counter–Plaintiffs/Appellees/Cross–Appellants.

No. 1 CA–CV 06–0684.

Court of Appeals of Arizona, Division 1, Department B.

March 11, 2008.

Vakula Kottke, PLC by Alex B. Vakula, and Jennifer B. Campbell, Marguerite Kirk, Prescott, Attorneys for Plaintiff/Counter–Defendant/Appellant–Cross–Appellee.

Tevis Reich, Attorney at Law by Tevis Reich, Flagstaff, Attorneys for Defendants/Counter–Plaintiffs/Appellees/Cross–Appellants.

Mack & Associates PC by Richard V. Mack, and Paula M. DeMore, Phoenix, and K. Michelle Lind, General Counsel for the Arizona Association of Realtors, Phoenix, Attorneys for Amicus Curiae Arizona Association or Realtors.

## OPINION

OROZCO, Judge.

¶ 1 Mining Investment Group, LLC, (Buyer) appeals from partial summary judgment finding that Buyer's failure to fund escrow on the closing date of a real estate purchase agreement with Billy and Sandra Roberts (Sellers) constituted a material breach of contract. Buyer also appeals the trial court's award of liquidated damages to Sellers. Sellers cross-appeal the trial court's denial of their cross-motion for summary judgment on their claim for improper filing of a lis pendens. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On August 17, 2005, Buyer entered into a purchase contract (the contract) for approximately two acres of vacant land owned by Sellers for a total purchase price of $126,000. The contract provided that the purchase price would be paid as follows: an initial earnest money deposit of $10,000; an additional $30,000 deposit on or before the close of escrow; and a $86,000 promissory note and deed of trust payable to Sellers.

¶ 3 The contract originally set the close of escrow on or before October 12, 2005. However, given a scheduling conflict on Buyer's part, the parties mutually agreed to extend the closing date to October 14, 2005.[1] Although Buyer had deposited the $10,000 earnest money with the escrow company, Yavapai Title Agency (Yavapai Title), it had not deposited the additional $30,000.

¶ 4 On October 14, 2005, Sellers arrived at Yavapai Title's office at 1:00 p.m. to sign all the necessary documents to close escrow. After waiting two hours for Buyer to wire transfer the $30,000 deposit to Yavapai Title, Sellers left. By the close of business at 5:00 p.m., Yavapai Title had not received the $30,000 from Buyer. After being made aware of this, Sellers faxed a cancellation notice withdrawing the property from escrow, which Yavapai Title received at approximately 5:30 p.m. On October 17, 2005, one business day after the scheduled closing,[2] Buyer wire transferred the $30,000 to Yavapai Title.

¶ 5 On October 24, 2005, Buyer filed a complaint, requesting specific performance of the contract, which it alleged Sellers anticipatorily breached. In connection with the complaint, Buyer also recorded a Notice of Lis Pendens regarding the property in dispute. Sellers, thereafter, moved for partial summary judgment, requesting that the court enter an order finding that Buyer's failure to fund escrow on the closing date constituted a material breach pursuant to a "time of the essence" clause contained in the contract and, as a result, Buyer forfeited its $10,000 earnest money deposit. Sellers also filed a counterclaim, asserting that the lis pendens recorded by Buyer was groundless in violation of Arizona Revised Statutes (A.R.S.) section 33–420 (2007).

¶ 6 Buyer cross-moved for summary judgment, requesting the court enter an order finding that its delay in funding the escrow account by one business day was an immaterial breach, notwithstanding the "time of the essence" clause, and that Sellers' counterclaim was meritless. Sellers, in turn, cross-moved for summary judgment on their counterclaim.

¶ 7 The trial court granted Sellers' motion for partial summary judgment, finding that Buyer's failure to fund the escrow account by closing constituted a material breach pursuant to the terms of the contract. The court further found that Sellers were entitled to the full amount of earnest money deposited by Buyer, pursuant to a liquidated damages clause contained in the contract, as well as attorneys' fees. The court denied Seller's cross-motion for summary judgment on the counterclaim, finding that Buyer had a good faith legal argument and, accordingly, the lis pendens was not improper.[3]

1. The parties expressly agreed that the extension was to have no effect on the other terms and conditions of the contract.

2. Because October 15 and 16, 2005 fell on a Saturday and Sunday, Yavapai Title was not open for business on those days.

3. Giving its findings, the court ordered the Buyer to release the lis pendens.

¶8 Buyer timely appealed and Sellers timely cross-appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶9 This court reviews "a grant of summary judgment de novo." *Emmett McLoughlin Realty, Inc. v. Pima County*, 212 Ariz. 351, 353, ¶2, 132 P.3d 290, 292 (App.2006). Additionally, "[w]e view the facts in the light most favorable to the party against whom summary judgment was entered." *Id.* (citing *Link v. Pima County*, 193 Ariz. 336, 340, ¶12, 972 P.2d 669, 673 (App. 1998)). A motion for summary judgment should be granted if there is no genuine issue of material fact. Ariz. R. Civ. P. 56(c)(1).

### *The Materiality of Buyer's Breach*

¶10 Buyer argues that the trial court erred in granting partial summary judgment in favor of Sellers because the contract conferred on Buyer an equitable property interest, which could only be forfeited by a material breach of contract. Notwithstanding the express terms of the contract, Buyer argues that, at a minimum, a question of fact exists as to the "materiality" of its failure to fund escrow by the scheduled closing date. Buyer maintains that *Foundation Development Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 788 P.2d 1189 (1990) and the Restatement (Second) of Contracts § 241 (1981) should control our determination of the issue. We disagree.

¶11 *Loehmann's* involved a commercial lease containing a "time of the essence" clause. 163 Ariz. at 439–40, 788 P.2d at 1190–91. After the tenant was a few days late in paying common area charges, the landlord brought a forcible detainer action pursuant to A.R.S. § 33–361(A) against the tenant seeking to terminate the lease. *Id.* at 441, 788 P.2d at 1192. After an extensive discussion of the importance of a tenant's

property interest at common law, *Id.* at 441–42, 788 P.2d at 1192–93, the Arizona Supreme Court concluded that, although a tenant could forfeit such interest if the tenant committed a material breach, A.R.S. § 33–361(A) should not be construed as permitting a landlord to terminate a leasehold for every breach of the lease, especially one that is trivial. *Id.* at 443–44, 788 P.2d at 1194–95. The Court then adopted the Restatement (Second) of Contracts § 241, which sets forth the standards for determining the materiality of a breach of contract.[4] *Loehmann's*, 163 Ariz. at 446–47, 788 P.2d at 1197–98. Applying § 241 to the "landlord-tenant context," the Court held that the tenant's breach was trivial, especially in light of the fact that the tenant was at most three days late in paying the common area charges. *Id.* at 447–48, 788 P.2d at 1198–99.

¶12 Because there was a "time of the essence" clause in the lease agreement, the court in *Loehmann's* also considered whether such a provision could in effect render material an otherwise trivial breach. *Id.* at 449–50, 788 P.2d at 1200–01. In holding that a "time of the essence" clause was not dispositive in determining the materiality of a breach, the Court reasoned "[t]he mere incantation that 'time is of the essence' works no magic to transform trivial untimeliness into a material breach; rather, the same factors we delineated in determining general materiality apply to evaluating the effect of a particular 'time of the essence' provision." *Id.* at 450, 788 P.2d at 1201.

¶13 We do not find *Loehmann's* to be controlling in an executory contract for the purchase of real property. Buyer correctly asserts the well-established principle that an executory contract, like the real estate contract here, operates to pass to the buyer an equitable interest in the land and to the seller an equitable interest in the pur-

---

4. The factors to be considered under § 241 include:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer

forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

chase proceeds. *Tucker v. Byler,* 27 Ariz. App. 704, 708, 558 P.2d 732, 736 (1976). However, Buyer is incorrect in its assertion that the equitable interest it held in the property "necessarily included" a possessory interest in the property akin to the possessory interest held by the tenant in *Loehmann's.* It is well-established that "[a] contract for the sale of realty does not effect a transfer of legal title," which remains in the seller's name until the close of escrow. *Wayt v. Wayt,* 123 Ariz. 444, 446, 600 P.2d 748, 750 (1979); *Hoyle v. Dickinson,* 155 Ariz. 277, 280, 746 P.2d 18, 21 (App.1987). Furthermore, "the buyer is not entitled to possession prior to the transfer of legal title unless the contract expressly entitles him to possession or the seller voluntarily grants him possession." *Stapley v. American Bathtub Liners, Inc.,* 162 Ariz. 564, 566, 785 P.2d 84, 86 (App.1989). We, therefore, do not find that the equitable interest held by Buyer by virtue of the executory contract was elevated to a possessory interest meriting protection from inequitable forfeiture under *Loehmann's.*

¶ 14 Nor do we find the reasoning adopted in *Loehmann's* persuasive in resolving this matter, when the parties' contract expressly provided that failure to perform (i.e., pay the required funds by the close of escrow) would constitute a material breach. As previously stated, the primary issue before the Court in *Loehmann's* was whether the tenant's delay in paying common area charges was a material breach of the commercial lease agreement. *Id.* at 449, 788 P.2d at 1200. Applying the factors set forth in the Restatement (Second) of Contracts § 241 for determining the materiality of a breach, the Court concluded that the delay was trivial. *Id.* at 447–48, 788 P.2d at 1198–99. Buyer asks that we employ a similar analytical framework and determine the materiality of the breach at hand in light of § 241.

¶ 15 Applying the Restatement (Second) of Contracts § 241, however, would require us to ignore the express terms that the parties contracted for and essentially rewrite the contract. Unlike the lease agreement in *Loehmann's,* the parties' contract expressly provides for the materiality of the breach at issue. The contract twice states that the failure to render performance by the scheduled close of escrow would constitute a "material" breach:

> Buyer acknowledges that failure to pay the required funds by the scheduled Close of Escrow ... shall be construed as a material breach of this contract, and all earnest money shall be subject to forfeiture.

> The parties to this Contract expressly agree that the failure of any party to comply with the terms and conditions of this Contract by the scheduled Close of Escrow will constitute a material breach of this Contract, rendering the Contract subject to cancellation....

Additionally, the contract contains a "time of the essence" provision.

¶ 16 We have long held that we will give effect to a contract as written where the terms of the contract are clear and unambiguous. *Hadley v. Sw. Properties, Inc.,* 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977); *Grubb & Ellis Mgmt. Services, Inc. v. 407417 B.C., L.L.C.,* 213 Ariz. 83, 86, ¶ 12, 138 P.3d 1210, 1213 (App.2006). "It is not within the province ... of the court to alter, revise, modify, extend, rewrite or remake an agreement.... Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Goodman v. Newzona Inv. Co.,* 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966); *Valley Nat'l Bank of Phoenix v. Shumway,* 63 Ariz. 490, 496, 163 P.2d 676, 678 (1945) ("[C]ourts cannot make contracts for the parties ....").

¶ 17 The parties do not dispute the language of the contract, nor does Buyer assert that the relevant provisions are ambiguous. Buyer also does not dispute that it failed to deposit the $30,000 into escrow by the scheduled closing. It is, therefore, not necessary to apply the Restatement (Second) of Contracts § 241 because the contract itself expressly provides for the materiality of the breach at issue. Buyer understood that time was of the essence and that the parties' agreement was conditioned on Buyer depositing the necessary funds by the close of escrow on October 14, 2005. Furthermore,

Sellers had already accommodated Buyer's previous request to extend the October 12 closing date by two additional days, which the parties memorialized in an addendum to the contract. Buyer made no similar request leading up to October 14. When the funds due pursuant to the contract were not received, Sellers assumed Buyer was not "serious" about the purchase and cancelled the contract.

¶ 18 There being no material facts persuading us otherwise, we hold that Buyer's failure to deposit the necessary funds into escrow by the scheduled closing constituted a material breach as expressly provided by the contract at issue. Accordingly, we affirm the trial court's grant of partial summary judgment in favor of Sellers.

### Liquidated Damages

¶ 19 Buyer also contends that the trial court erred in ordering the forfeiture of Buyer's $10,000 earnest money deposit pursuant to a liquidated damages provision in the contract. Buyer specifically argues that the issue of liquidated damages was never raised by Sellers in their pleadings nor argued at any point before the trial court, thereby preventing Buyer from asserting a defense that the liquidated damages provision was punitive. We disagree.

¶ 20 The contract expressly made remedies available to both parties in the event of a breach. One such remedy available to the Sellers provided that "because it would be difficult to fix actual damages in the event of Buyer's breach, the amount of the earnest money may be deemed a reasonable estimate of the damages." "When liquidated damages are specified in a contract, the terms of the contract generally control." *Roscoe–Gill v. Newman,* 188 Ariz. 483, 485, 937 P.2d 673, 675 (App.1996) (citation omitted). Furthermore, we have "previously noted that '[a] provision for the forfeiture of earnest money on breach of a contract to purchase real estate has been held a stipulation for liquidated damages.'" *Id.* (quoting *Lyons v. Philippart,* 140 Ariz. 36, 38, 680 P.2d 172, 174 (App.1983)). A liquidated damages clause, however, will be deemed to be to a penalty, and therefore unenforceable, if it

provides for an unreasonably large sum of damages. *Id.* Finding the clause contained in the parties' contract to be reasonable, the trial court awarded Sellers the earnest money deposited in escrow.

¶ 21 Contrary to Buyer's argument that the issue was never raised in the pleadings, Sellers requested the forfeiture of the earnest money as expressly provided for in the contract in both their motion for partial summary judgment and cross-motion for summary judgment. The trial court also addressed the matter at oral argument. Moreover, Buyer addressed Seller's request, albeit briefly, in its response to Sellers' motions for summary judgment. Also, Buyer did not complain at oral argument or express surprise when the court discussed the issue. Finding that the Sellers properly raised the issue in both the pleadings and during oral argument and that Buyer had sufficient opportunities to raise any defenses, we affirm the trial court's award of earnest money to Sellers.

### Lis Pendens

¶ 22 On cross-appeal, Sellers argue that the trial court erred in finding for Buyer on Sellers' counterclaim that Buyer recorded a groundless lis pendens. Under A.R.S. § 33–420(A), one party is entitled to statutory damages if another records a document affecting real estate, the basis of which that party knows or has reason to know is groundless. In denying Sellers' cross-motion for summary judgment, the trial court found that Buyer's complaint, while unsuccessful, was brought in good faith and, therefore, the lis pendens was not improper. Sellers argue that the trial court applied the wrong standard in determining whether the lis pendens was groundless. This court will affirm the judgment "even if the trial court has reached the right result for the wrong reason." *City of Phoenix v. Geyler,* 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985).

¶ 23 Sellers correctly maintain that the appropriate test to determine a groundless lis pendens, as enunciated in *Evergreen W., Inc. v. Boyd,* 167 Ariz. 614, 810 P.2d 612 (App.1991), is whether the underlying action

affecting title to the property has no arguable basis. *Id.* at 621, 810 P.2d at 619. Sellers argue that Arizona law is "crystal clear" in requiring courts to give conclusive effect to contractual terms that on their face are clear and unambiguous. As such, Sellers contend Buyer had no arguable basis in the underlying action affecting title to the property.

¶ 24 We do not agree with Sellers that Buyer's complaint had no arguable basis and that therefore the lis pendens was groundless. While we have rejected Buyer's arguments regarding the materiality of the breach at issue, we find that there was, at a minimum, "some" arguable basis to its claim. *See Evergreen W.,* 167 Ariz. at 621, 810 P.2d at 619 ("Upon a showing that the claim has 'some basis,' ... the lis pendens should remain in effect until a trial on the merits."). Here, *Loehmann's,* the case principally relied upon by Buyer, presented a "diametrically different" conclusion than that argued by Sellers. Indeed, although the case involved a commercial leasehold which did not expressly provide for the materiality of the breach, *Loehmann's* was similar to the facts in the case at hand in that the delay causing the breach was only a few days. The contract in *Loehmann's,* similarly, contained a "time of the essence" provision, to which the *Loehmann's* court did not afford much weight, at least in the landlord-tenant context. *See* 163 Ariz. at 449–50, 788 P.2d at 1200–01 ("Considering such provisions may be more appropriately included in contracts for the sale of goods where a party's performance may be conditioned on the promisor's timely performance, it is questionable whether such 'stock phrases' add much to the parties' obligations in cases such as this.") While not directly on point, Buyer urged us to adopt this reasoning in the land sales context, which we find created an arguable, although ultimately unsuccessful, basis in the underlying claim. "[E]ven if a court might find that the action ultimately fails on its merits-the notice of lis pendens is not groundless." *Chevron U.S.A. v. Schirmer,* 11 F.3d 1473, 1480 (9th Cir.1993); *see also Evergreen W.,* 167 Ariz. at 621, 810 P.2d at 619.

¶ 25 Furthermore, an *amicus curiae* brief was filed by the Arizona Association of Realtors (A.A.R.) seeking "clear guidance" on a statewide divergence of views among attorneys, real estate practitioners, and consumers regarding the enforceability of mandatory close of escrow provisions in real estate contracts. If the law was as "crystal clear" as Sellers suggest, such a divergence would likely not exist.

### Attorneys' Fees

¶ 26 The parties' contract further provides that reasonable attorneys' fees and costs shall be awarded to the prevailing party at trial and on appeal. Both parties accordingly request attorneys' fees incurred on appeal. "A contractual provision for attorneys' fees will be enforced according to its terms. Unlike fees awarded under A.R.S. § 12–341.01(A), the court lacks discretion to refuse to award fees under the contractual provision." *Chase Bank of Ariz. v. Acosta,* 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (App.1994) (citations omitted). Therefore, pursuant to the express terms of the parties' contract, we award Sellers, the successful party on appeal, costs and reasonable attorneys' fees, upon compliance with Rule 21(a) of the Arizona Rules of Civil Appellate Procedure, incurred in connection with the appeal of the judgment in their favor. Finding that the lis pendens recorded by Buyer was not groundless, however, we do not award attorneys' fees to Sellers, as requested, in accordance with A.R.S. § 33–420(A) (2007).

### CONCLUSION

¶ 27 For the following reasons, we affirm the trial court's orders granting partial summary judgment to Sellers. We also affirm the court's award of earnest money to Sellers. Finally, we affirm the court's denial of Sellers' cross-motion for summary judgment and find that Buyer's recorded lis pendens was not groundless.

CONCURRING: DANIEL A. BARKER, Presiding Judge, and ANN A. SCOTT TIMMER, Judge.