NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IFTIGER FAMILY TRUST, an Arizona Trust by and through Trustees, JAMES DUBOIS, III, and JEFFREY DUBOIS, *Plaintiffs/Appellees*,

*v.*

W. DAVID WESTON, *Defendant/Appellant*.

No. 1 CA-CV 17-0463
FILED 5-24-2018

Appeal from the Superior Court in Mohave County
No. S8015CV201200412
The Honorable Richard Weiss, Judge

**AFFIRMED**

APPEARANCES

W. David Weston, Salt Lake City, Utah
*Defendant/Appellant*

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Jennifer B. Campbell joined.

**B E E N E**, Judge:

¶1        Defendant W. David Weston ("Weston") appeals the superior court's final judgment, challenging the amount of damages he was awarded.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        This is Weston's second appeal against Plaintiff Iftiger Family Trust ("Trust").  We limit our discussion to the facts and procedural history relevant to this appeal, however, a more detailed account can be found in our decision of Weston's first appeal.  *See Iftiger Family Trust v. Sweet*, 1 CA-CV 15-0385, 2016 WL 6123889, at * 1, ¶ 1 (Ariz. App. Oct. 20, 2016) (mem. decision).

¶3        In 2006, the Trust and Gyro Stone entered into an agreement ("Agreement") concerning the interest and operation of a mine located in Mohave County and owned by the Trust.  The Agreement provided Gyro Stone with a 60% interest and the Trust with a 40% interest in the mine production, and provided that Gyro Stone would furnish all the startup costs until the mine produced gold at a particular rate ("Startup Period").  On June 4, 2007, the Startup Period ended and, pursuant to the Agreement, Gyro Stone and the Trust began to share profits and expenses according to their respective interest percentages (60%/40%).

¶4        Over the next few years, the partnership between the Trust and Gyro Stone deteriorated, and in 2012, the Trust filed suit against various parties implicated in the Agreement, including Gyro Stone.  In 2013, Gyro Stone's sole partner, Anne Sweet, assigned all her interests and rights in the lawsuit to Weston and he was substituted in as a party.[1]  Shortly thereafter, Weston filed his own counterclaims and third-party claims[2] for

---

[1]     It is unclear from the record why Anne Sweet assigned her interests and rights in this lawsuit to W. David Weston or how and in what capacity he became involved with Anne Sweet and Gyro Stone.

[2]     Weston's third-party claims against James Dubois, III and Jeffrey Dubois were dismissed following the 2015 default hearing and we affirmed dismissal in Weston's first appeal. *See Iftiger Family Trust v. Sweet*, 1 CA-CV 15-0385, 2016 WL 6123889, at * 1, ¶ 1 (Ariz. App. Oct. 20, 2016) (mem. decision).

eight causes of action: conversion, unjust enrichment, interference with potential business advantage, and five counts of duplicate arguments constituting a single breach of contract claim based on the Trust's breach of the Agreement. After the Trust failed to respond to Weston's requests for admissions, the superior court deemed those admitted. Then, in March 2015, the court entered a default against the Trust when it failed to defend against Weston's claims.

¶5 A default hearing was held in March 2015 as to Weston's counterclaims and third-party claims only. After taking the matter under advisement, the superior court found, among other things, that (1) Gyro Stone breached the Agreement by demanding payment from the Trust for the costs incurred during the Startup Period, in direct conflict with the terms of the Agreement; (2) Gyro Stone breached the Agreement by beginning mining operations without notifying the mining inspector or obtaining the appropriate permits as required by law; (3) the mining operation was not profitable pursuant to the provisions of the Agreement; (4) Weston failed to establish that the Trust breached the Agreement or that he was entitled to punitive damages and; (5) Weston was entitled to $20,000 for conversion for equipment that Gyro Stone supplied and the Trust removed from the mine site.

¶6 In the first appeal, in pertinent part, we reversed dismissal of Weston's breach of contract claims and remanded for further determination on damages. *See Iftiger Family Trust*, 1 CA-CV 15-0385, at * 1, ¶ 1. We directed the superior court to "determine the amount of damages, if any, proven at the default judgment hearing" after the end of the Startup Period, of which "Weston will be entitled to forty percent of the total costs, but not lost profits, incurred after that date." *Id*. at * 5, ¶¶ 25, 27. As to Weston's request for punitive damages, we found that "[a]lthough punitive damages are not usually awarded in breach of contract actions, the superior court may consider whether Weston is entitled to them on remand." *Id*. at ¶ 26.

¶7 On remand, the superior court reviewed and considered the transcripts and exhibits of the 2015 default hearing, as well as our 2016 mandate. The court found, based on the evidence, including the Summary of Damage Claims submitted by Weston, that Gyro Stone incurred total expenses of $47,497.02 after the Startup Period. Pursuant to our specific mandate, the court awarded Weston $18,998.81, representing 40% of the costs the Trust was liable for under the terms of the Agreement. As for punitive damages, the court found insufficient evidence presented at the hearing supported such an award. Weston unsuccessfully moved for

rehearing to amend the final judgment and final judgment was entered in July 2017.

**¶8** Weston timely appealed.[3] We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes sections 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶9** "We defer to a trial court's factual findings, so long as they are supported by substantial evidence, but we review any issues of law de novo." *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 442, ¶ 12 (App. 2001). "[E]ven where conflicting evidence exists, this court will not reweigh the evidence and we affirm the trial court's ruling [if] substantial evidence supports it." *Sholes v. Fernando*, 228 Ariz. 455, 460, ¶ 15 (App. 2011) (citation and internal quotations omitted).

**¶10** Weston argues the superior court erred by failing to award him the entire $47,497.02 of expenses Gyro Stone incurred after the Startup Period. Specifically, Weston claims, without citation to supporting authority, that he is entitled to the entire amount because the Trust's conduct caused the loss of Gyro Stone's investment, the court ignored the weight of his well-pled facts and the Trust's admissions, and the Trust violated the covenant of good faith and fair dealing. We disagree.

**¶11** First, although the Agreement provides that Gyro Stone would receive 60% of the profits, the superior court found, and Weston does not challenge, that the mine was not profitable. Next, Weston himself submitted evidence at the default hearing titled Summary of Damage Claims indicating that Gyro Stone incurred total expenses of $47,497.02 following the Startup Period. Contrary to Weston's assertion, however, he is not entitled to 100% of those costs. The very terms of the Agreement entered into by Gyro Stone and the Trust provide that the Trust was liable only for 40% of the costs. Weston does not argue the Agreement is the result of fraud. As such, because the parties bound themselves to a lawful contract, we will give effect to the terms of their clear and unambiguous contract as written. *See Mining Inv. Grp., LLC v. Roberts*, 217 Ariz. 635, 639, ¶ 16 (App. 2008) ("It is not within the province . . . of the court to alter, revise, modify, extend, rewrite or remake an agreement. . . . Where the

---

[3] The Trust did not file an answering brief. In the exercise of our discretion, however, we decline to treat its failure to respond as a confession of reversible error. *See Gonzales v. Gonzales*, 134 Ariz. 437, 437 (App. 1982).

intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.") (citation omitted). Last, on remand, we instructed the superior court to determine damages and specifically stated that Weston was entitled to 40% of the total costs, but not lost profits. Substantial evidence supports the superior court's award of $18,998.81, or 40%, to Weston.

¶12    Weston next argues that the superior court erred by failing to award him "at least $10,000 in punitive damages" because "the evidence established the actions of the [Trust] were motivated by intentional malice and conversion."

¶13    "Punitive damages are not usually awarded in contract actions, unless there is an accompanying tort." *Miscione v. Bishop*, 130 Ariz. 371, 374-75 (App. 1981). It is unclear from Weston's brief what specific actions taken by the Trust entitle him to punitive damages, however, he claims that there were "multiple instances in which [the Trust] and [its] agents acted in a way that created a substantial risk of harm to [Gryo Stone's] agents." We discern his argument to center around alleged "disruptions" at the mine by certain individuals that prohibited or stopped mining operations, thereby harming Gyro Stone's investment. Before remand, however, the superior court specifically found that, based on the evidence at the 2015 default hearing, Gryo Stone's own failure to allow a Trust representative on site at the mine, as required by the Agreement, led to those alleged disruptions and the evidence failed to establish that those individuals were agents of or under the authority of the Trust. Weston did not allege a tort accompanying the breach of Agreement claim, nor did he prove any tortious or fraudulent conduct. On remand, the superior court found insufficient evidence supported an award for punitive damages. Because the decision to award punitive damages was within the superior court's discretion, we find no error. *See Miscione*, 130 Ariz. at 375.

**CONCLUSION**

¶14    For the foregoing reasons, we affirm the superior court's final judgment.