NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VIKING INSURANCE COMPANY OF WISCONSIN,
*Plaintiff/Appellant*,

*v.*

MARVIN LINK and CAROLE LINK, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0646
FILED 9-27-2018

Appeal from the Superior Court in Mohave County
No.  S8015CV201100599
The Honorable Lee Frank Jantzen, Judge

**VACATED; REMANDED**

COUNSEL

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Michael W. Halvorson, Jennifer B. Anderson
*Counsel for Plaintiff/Appellant*

The Sutherland Law Firm, Kingman
By Douglas D. Sutherland
*Counsel for Defendant/Appellee Herbert Walton*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

---

**P E R K I N S**, Judge:

¶1            An insurance carrier brought this action seeking declaratory relief that its policy did not cover damages to a tractor towed behind the insured's vehicle. For the following reasons, we vacate the trial court's judgment and remand for entry of judgment in favor of insurance carrier.

### FACTUAL AND PROCEDURAL HISTORY

¶2            The relevant facts are undisputed. Marvin Link insured his Silverado pickup truck through Viking Insurance Company of Wisconsin ("Viking"). Link originally had the vehicle insured when he bought it in 2009; because Link had previously insured two other trucks through Viking, the salesperson at the dealership contacted Link's insurance broker and arranged for the insurance policy. Link had no direct contact with any representative of Viking at that time, although the salesperson at the car dealership relayed to Link that he had "full coverage" on the truck. Within two weeks, Viking sent Link a copy of the insurance policy, which Link never read other than to confirm that the policy related to and listed the Silverado pickup truck.

¶3            In 2010, Link borrowed a tractor from Herbert Walton; once finished with it, Link rented a utility trailer from a commercial rental company to return the tractor to Walton. The rental company hooked the trailer onto Link's truck, then Link returned to his property and loaded the tractor onto the trailer. While towing the tractor from his property back to Walton's, the trailer detached from Link's truck and, although the safety chains remained attached, the trailer drifted into the median and rolled over with the tractor, causing substantial damage. A passenger in the truck was also injured and Viking asserts it covered Link's liability as to the passenger's injuries; that coverage is not at issue here.

¶4            Walton filed suit in trial court against Link and the rental company for the damages to the tractor. Viking provided Walton a defense for this civil action, reserved its rights to deny coverage for Walton's

claimed damages, and brought the instant suit for declaratory relief against Link and Walton. Viking's complaint asked the court to construe its policy with Link and hold that it did not cover the damages to the tractor. Viking later voluntarily dismissed its claim against the rental company with prejudice. Viking moved for summary judgment, which the court denied. Thereafter, Walton and Link settled the underlying suit pursuant to *United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 121 (1987).

¶5         Under the *Morris* agreement, Link consented to a judgment awarding $75,000 to Walton for damages of "destruction of property; loss of use; mental anguish; depression; and pain and suffering," all related to the damaged tractor.  Under the agreement, in return for a covenant not to execute on the judgment, Link also assigned to Walton any claims Link had against Viking arising out Viking's issuance and subsequent denial of insurance coverage. Walton then filed a counterclaim against Viking in this case for breach of the insurance contract, negligence, and consumer fraud. Walton alleged that Viking had represented to Link that it provided "a comprehensive insurance policy which would cover the Links for all types of accidents which could happen while operating" the pickup truck. Viking later renewed its motion for summary judgment, and, following oral argument, the court denied the motion.

¶6         At the next status conference, the parties discussed the court's intended meaning of certain language in the order denying Viking's motion and whether the court had ruled in favor of Walton. The court clarified that its intent had been to rule for Walton on the merits of Walton's counterclaim and ordered his counsel to draft a judgment. The court entered its judgment on September 30, 2016, then amended the judgment on October 25 to conform with Arizona Rule of Civil Procedure 54(c).

¶7         In the judgment, the trial court held that none of the contract's exclusions limited coverage for damage to the towed tractor. The court explained that, although the policy defined the term "property damage," it did not define the term "damage to property," and that, because the policy used the term "damage to property" in the exclusion upon which Viking relied, neither "property damage" nor "loss of use" were part of the exclusion. The court further held that the policy contained no exclusion for claims regarding "mental anguish, depression and emotional distress damages." The court went on to hold that, in any event, "Link reasonably believed that he would be covered for all of his negligent acts in operating his vehicle while pulling a trailer." The court reasoned that pulling a trailer is an intended use of a pickup truck and that Link could reasonably expect

that the Viking policy would cover all damages arising out of an intended use.

¶8        Viking timely appealed from the final judgment, but we stayed the appeal after Viking filed a motion with the trial court "for new trial or in the alternative to alter or amend the judgment." The court denied the motion as to a new trial, but granted the motion to amend the judgment to allocate damages to the categories identified in the $75,000 *Morris* agreement and subsequent judgment. The trial court again ordered Walton to prepare a judgment, and signed its final judgment on October 23, 2017.

¶9        In the final judgment, the trial court again denied Viking's request for a new trial and apportioned damages in the amounts of $29,000 for the tractor, $36,000 for Walton's loss of use of the tractor, and $10,000 "for pain and suffering, emotional distress and mental anguish damages, for Walton not having" the tractor. Viking timely filed an amended notice of appeal from that judgment and we reinstated the appeal.

## DISCUSSION

¶10        As an initial matter, the parties dispute the standard of review. On appeal, Viking now argues that no trial took place and the court entered a *sua sponte* summary judgment pursuant to Arizona Rule of Civil Procedure 56(h)(1) (now 56(f)(1)). Walton argues that the court converted the final status conference into a bench trial, and thus the applicable standard of review should be abuse of discretion for factual matters.

¶11        The parties do not dispute any facts, however. The only disputes presented in the briefs involve contract interpretation and the reasonable expectations doctrine, each of which we review *de novo. Am. Power Prod., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 367, ¶ 12 (2017) (contract interpretation); *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 246–47, ¶ 16 (App. 2005) ("reasonable-expectations claims may present questions of both fact and law," and we will apply the clear-error standard to review factual findings, but "[w]e will review the trial court's conclusions of law . . . de novo."). Because the parties have not argued that any errors arose from either the court's factual findings or procedural foibles, our review is *de novo.*

I. **Contract Interpretation**

**¶12**       In interpreting a contract, our goal is "to determine and enforce the parties' intent." *Dunn v. FastMed Urgent Care PC*, 793 Ariz. Adv. Rep. 20, *2, ¶ 10 (App. Jun 19, 2018). To do so, we begin with the plain meaning of the words, taken in the context of the entire contract. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). "Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Mining Inv. Grp., LLC v. Roberts*, 217 Ariz. 635, 639, ¶ 16 (App. 2008) (quoting *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966)). A term of an insurance policy is ambiguous if it "is subject to conflicting reasonable interpretations." *Teufel v. Am. Family Mut. Ins. Co.*, 244 Ariz. 383, 385, ¶ 10 (2018) (quotation omitted).

**¶13**       The policy insured Link's truck "subject to the terms and conditions of this policy . . . up to the limits of liability." The terms and conditions included several exclusions, including an exclusion for "[d]amage to property owned by, rented to, or being transported by, used by, or in the charge of an insured person, except damage to a private residence or garage you rent." Furthermore, the policy states: "'Property damage' means damage to or destruction of tangible property, including loss of its use." The policy also defines "insured person" as "[y]ou" or "[a]ny person using your insured car."

**¶14**       By the plain meaning of the contract, the tractor was tangible property that was damaged while an insured person transported it. Link, the insured person, put the tractor onto the trailer to transport it back to Walton's property. The tractor was damaged during this trip. Under these circumstances, the policy does not cover the physical damage to the tractor.

**¶15**       Nevertheless, Walton argues that the "loss of use" damages do not fall under the exclusion because the exclusion uses the term "damage to property" whereas the policy defines only the term "property damage." Because the policy fails to define "damage to property" as including "loss of use," Walton argues, loss of use damages do not fall within the exception. We disagree.

**¶16**       Arizona courts view insurance contract language from the "standpoint of the average layman who is untrained in the law or insurance." *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 469, ¶ 17 (App. 2010) (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 537 (1982)).

"Common sense is as much a part of contract interpretation as the dictionary or the arsenal of canons." *Allstate Prop. & Cas. Ins. Co. v. Watts Water Tech., Inc.*, 244 Ariz. 253, 257, ¶ 12 (App. 2018) (quotation omitted). We simply cannot say that a layman employing his common sense would understand "property damage" and "damage to property" to mean two separate concepts, particularly in light of the fact that the contract expressly defines "property damage" to mean "damage to . . . property, including loss of its use." *See Assoc. Aviation Underwriters v. Wood*, 209 Ariz. 137, 179, ¶ 147 (App. 2004) ("Arizona courts disfavor hypertechnical arguments") (quotation omitted). Accordingly, we hold that under this contract "loss of use damages" to the tractor are plainly one and the same with "property damage" and "damage to property" and are thus excluded from coverage.

¶17        Walton also argues that loss of use damages are "separate and distinct" from property damages. This is true in a certain sense, as a tort plaintiff must prove loss of use damages separately from the damages that caused the property to be in an unusable condition in the first place. *See Max of Switz., Inc. v. Allright Corp. of Del.*, 187 Ariz. 496, 499 (App. 1997). In this case, however, we need not consider the definitions of terms employed in case law because the policy itself defines property damage as including loss of use damages. *See Am. Power Prod., Inc v. CSK Auto, Inc.*, 242 Ariz. 364, 370, ¶ 22 (2017) (parties can define terms "in whatever way they see fit" so long as the contract is "legal and enforceable").

¶18        Finally, in the final amended judgment the trial court awarded "$10,000.00 for pain and suffering, emotional distress and mental anguish damages, for Walton not having his . . . tractor." None of these damages are available here. On appeal, Walton admits that he has never asserted "that he incurred pain and suffering type damages. There is no question that Walton was not physically hurt as a result of the subject accident." Furthermore, Walton argues the emotional distress damages arise from the fact that he relied upon the tractor "to assist and treat his symptoms of Post-Traumatic Stress Disorder." The emotional distress damages thus arise only from the use of the tractor and loss of use damages are excluded under the contract. *See supra* ¶¶ 15–16. Finally, mental anguish is an element of the separate tort of negligent infliction of emotional distress, which has not been alleged here. *See Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302, ¶ 7 (App. 1999) (quoting *Keck v. Jackson*, 122 Ariz. 114, 115–16 (1979)). The insurance contract excludes from coverage all of the damages described in the *Morris* agreement.

## II. Reasonable Expectations

**¶19** The trial court held that Link reasonably expected that the Viking policy would cover the damages to the tractor because it provided coverage for utility trailers and because "[p]art of the intended function of Link's pick-up truck was to a pull a utility trailer."

**¶20** "Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a *limited* variety of situations." *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272 (1987) (emphasis in original). First, where an insurance term, "although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights," we will interpret it in light of the insured's reasonable expectations. *Id.* at 272–73 (citation omitted). Second is where the insured did not receive adequate notice of the term "and the provision is either unusual or unexpected, or one that emasculates apparent coverage." *Id.* at 273 (citation omitted). Third is where "some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured." *Id.* (citation omitted). Fourth is where an activity reasonably attributed to the insurer "induced a particular insured reasonably to believe that he has coverage," even though the policy "expressly and unambiguously" disclaims such coverage. *Id.* (citation omitted).

**¶21** Here, the exclusion can be understood by a reasonably intelligent consumer who checks on his or her rights. "Damage to property . . . transported by . . . an insured person" is not a difficult concept for a reasonably intelligent person to understand. Furthermore, after reading the exclusion, Link himself stated that the damage to the tractor fell within it.

**¶22** Moreover, Link admits he received the policy well before the accident, and Arizona law expressly allows for this type of exclusion, so we cannot say the exclusion is unusual or unexpected. A.R.S. § 28-4009(C)(4)(c); *Farmer Ins. Co. of Ariz. v. Voss*, 188 Ariz. 297, 298 (App. 1996) ("When the term at issue is one specifically authorized by statute, it cannot be characterized as unusual or unexpected.").

**¶23** Finally, the record does not contain the necessary factual predicate for the third and fourth factors. The only activity Link identified that created his impression of coverage was that the salesperson who sold him the car told him that he had "full coverage." Link knew at the time that the salesperson was not employed by Viking, and there is no indication that the salesperson was qualified as an insurance agent. After purchasing the

policy, Viking sent a copy to Link, but Link never read the policy or attempted to speak to a Viking representative about the policy's coverage. *See Voss*, 188 Ariz. at 298 ("The insured stated that he never read the policies and just assumed that he had . . . coverage. That is insufficient.").

**¶24**     Under these facts, we cannot say that Link's belief that the policy covered damage to the tractor was anything "more than the fervent hope usually engendered by loss." *Darner Motor Sales, Inc v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 390 (1984). Accordingly, we hold that it was not within Link's reasonable expectations for the policy to cover the damages to the tractor.

## CONCLUSION

**¶25**     For the foregoing reasons, we hold that the damages to the tractor, including its loss of use, were properly excluded from the policy's coverage by plain, unambiguous language and that under the undisputed facts of the case it was not reasonable for Link to expect the policy to cover damages to towed property. We therefore vacate the trial court's judgment and remand for entry of judgment in favor of Viking. Viking did not request fees or costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:  AA