STARING, Presiding Judge:
¶ 1 Valer Clark (formerly Valer Austin), on behalf of herself and the entities she owns and controls, appeals from the judgment entered after a jury trial, in which the trial court awarded Dan and Myriam Roe a life estate in a house and surrounding property and concluded that the divorce settlement agreement ("Settlement") entered between Valer and Josiah Austin did not require Josiah to defend and indemnify Valer against the Roes' life estate claim. For the reasons that follow, we reverse the judgment awarding a life estate to the Roes, as well as the judgment that Josiah is not required to defend and indemnify Valer.
Factual and Procedural Background
¶ 2 The parties' disputes stem from a life estate claim brought by the Roes against Valer, Cuenca Los Ojos Foundation Trust, El Coronado Ranch & Cattle Co. L.L.C., and El Coronado Ranch L.L.C. (collectively, "Valer"),[1] and the interpretation of an indemnification provision in the Settlement. We view the facts in the light most favorable to upholding the jury verdicts. Crackel v. Allstate Ins. Co. , 208 Ariz. 252, ¶ 3, 92 P.3d 882 (App. 2004).
¶ 3 Valer and Josiah divorced in 2015, several years after the Roes had moved into a house on El Coronado Ranch ("Ranch"), *572 which Valer and Josiah owned jointly. Valer obtained sole ownership of the Ranch pursuant to the terms of the Settlement. She subsequently demanded the Roes vacate the Ranch, and the Roes filed an action for declaratory judgment claiming a life estate in the house and surrounding property on the Ranch.
¶ 4 Valer asserted the statute of frauds as a defense to the Roes' claim, arguing there was no written contract evincing the creation of a life estate. She also filed a counterclaim to quiet title to the Ranch. In addition, Valer filed a third-party complaint against Josiah, alleging the Settlement required him to defend and indemnify her against the Roes' life estate claim.
¶ 5 Valer subsequently moved for summary judgment on the Roes' life estate claim and on her indemnification claim against Josiah. The trial court denied summary judgment on both claims, concluding issues of fact existed that required resolution at trial. At trial, pursuant to Rule 50, Ariz. R. Civ. P., Valer moved for judgment as a matter of law on the Roes' life estate claim, and the court denied her motion. After trial, the jury awarded the Roes a life estate in the house on the Ranch and found Josiah had not breached the indemnification provisions of the Settlement. Valer renewed her motions for judgment as a matter of law on the Roes' life estate claim and also moved for judgment as a matter of law on her third-party indemnification claim against Josiah. The court denied the motions and ultimately entered judgment in favor of the Roes, granting them a life estate in the house and 214 surrounding acres on the Ranch, and in favor of Josiah on the indemnification claim.
¶ 6 Valer appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).
Discussion
Statute of Frauds
¶ 7 Valer argues the statute of frauds bars the Roes' life estate claim because it is based on an oral contract and, therefore, the trial court erred when it denied her motions for judgment as a matter of law. In its denial of the Rule 50 motion Valer made at trial, the court concluded the alleged acts of part performance by the Roes "raise a question for the trier of fact as to whether [the Roes'] acts are unequivocally referable to the alleged agreement." Subsequently, when denying Valer's renewed motions, the court concluded it "d[id]n't think any other explanation is plausible.... [e]xcept a life estate." We review a trial court's ruling on a motion for judgment as a matter of law de novo. Monaco v. HealthPartners of S. Ariz. , 196 Ariz. 299, ¶ 6, 995 P.2d 735 (App. 1999).
¶ 8 Arizona's statute of frauds, A.R.S. § 44-101, in relevant part provides:
No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:
....
6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged.
"The statute of frauds is by its terms absolute, providing that '[n]o action' can be brought on oral contracts for the conveyance of land." Owens v. M.E. Schepp Ltd. P'ship , 218 Ariz. 222, ¶ 14, 182 P.3d 664 (2008).
¶ 9 Arizona, however, recognizes a "part performance" exception to the statute of frauds, excusing the writing requirement when acts of part performance are "unequivocally referable" to the alleged agreement. Id . ¶¶ 14-18 (quoting Restatement (Second) of Contracts § 129 cmt. d (1981) ). The exception thus "requires that any alleged act of part performance be consistent only with the existence of a contract and inconsistent with other explanations such as ongoing negotiations or an existing relationship between the parties." Owens , 218 Ariz. 222, ¶ 18, 182 P.3d 664 (emphasis added) (citation omitted). And, because the statute of frauds evinces a "clear *573 legislative prohibition against enforcement of an oral agreement for the conveyance of land[, t]he requirement that the alleged acts of part performance be unequivocally referable to the alleged contract assures that only in rare circumstances will courts exempt oral agreements from the plain terms of the statute." Id. ¶ 24. Further, a party's explanations for acts of alleged part performance are "not relevant" because "the alleged part performance must be 'alone and without the aid of words of promise ... unintelligible or at least extraordinary unless as an incident of ownership.' " Id . ¶ 23 (quoting Burns v. McCormick , 233 N.Y. 230, 135 N.E. 273, 273 (1922) ). Whether acts are sufficient to constitute part performance is a question of law, William Henry Brophy Coll. v. Tovar , 127 Ariz. 191, 194, 619 P.2d 19, 22 (App. 1980), which we review de novo, Frank R. v. Mother Goose Adoptions , 243 Ariz. 111, ¶ 17, 402 P.3d 996 (2017).
¶ 10 In this instance, the acts of part performance alleged by the Roes include: (1) selling their home in Mexico; (2) moving to the Ranch with their young son; (3) contributing approximately $155,000 to finishing and furnishing the Ranch house; and (4) working on the Ranch for Valer and Josiah. The Roes argue that these acts were undertaken in reliance on the alleged promise of a life estate and that the question of whether they are unequivocally referable to the existence of a life estate was an issue of fact for the jury. In addition, they argue the proponent of an alleged contract need only show his acts are unequivocally referable to the alleged contract "as between the two positions articulated by the parties." Valer, on the other hand, argues the Roes moved to the Ranch and worked for her and Josiah as part of a "work-for-free-rent arrangement," disputes the amount the Roes allegedly contributed to the Ranch house, and asserts she and Josiah contributed over $799,000 to constructing the house. Valer argues the Roes' acts are not unequivocally referable to an oral contract for a life estate, and she suggests several other scenarios under which they could be explained.
¶ 11 In determining whether the part performance exception applies to the Roes' life estate claim, we first consider whether their acts are inconsistent with all other explanations. See Owens , 218 Ariz. 222, ¶ 18, 182 P.3d 664 ("If the alleged acts do not conclusively establish that a contract exists, reliance upon them would circumvent the evidentiary function of the statute [of frauds]."); see also Tovar , 127 Ariz. at 194, 619 P.2d at 22 ("[T]he part performance alleged must be unequivocally referable solely to the oral contract."). Relying on Tovar , the Roes argue that the question in this instance is whether their acts are unequivocally referable to their position and inconsistent with the position asserted by Valer. As explained in Owens , however, the proponent of an alleged oral contract must show that his acts by themselves can only be explained by the existence of the contract he asserts-not that his position on the issue, as compared to the position of the other party, is more persuasive. 218 Ariz. 222, ¶¶ 16-18, 182 P.3d 664. A party's explanation of the relative strength of his position is not relevant to determining whether the part performance exception applies. Id. ¶ 23.
¶ 12 Moreover, Tovar is factually distinguishable. 127 Ariz. at 194-95, 619 P.2d at 22-23. There, the proponents of an oral long-term lease had paid rent for six to eight months while they were not using the premises and they made improvements worth approximately five months' rent, while the landowner claimed there was merely a month-to-month tenancy. Id. In contrast, the Roes assert the existence of a life estate in a house that cost approximately $955,000, as well as an additional 214 acres of surrounding land; yet, they only contributed approximately $155,000 (over $50,000 of which was spent on appliances, furniture, and maintenance) to the house during a span of approximately eight years. Further, in addition to distinguishable facts, Tovar was decided nearly thirty years before Owens , in which our supreme court makes clear that the unequivocally referable standard is a demanding one, part-performance exceptions to the statute of frauds are rare, and the determination of whether acts are unequivocally referable does not depend on the relative strength of the parties' explanations.
*574 Owens , 218 Ariz. 222, ¶¶ 16-24, 182 P.3d 664. Indeed, the very fact the Roes argue that they need only show that, as between their position and Valer's, their acts are unequivocally referable to the creation of a life estate supports the conclusion that the Roes' conduct does not "itself supply the key to what is promised." See Burns , 135 N.E. at 273.
¶ 13 The Roes also cite the example from Burns of a buyer who pays the purchase price for a parcel, takes possession, and improves the land, asserting it supports the argument that by concluding their acts are not unequivocally referable to the creation of a life estate, we give license to Valer and other similarly situated defendants to simply concoct other possible explanations to avoid enforcement. See 135 N.E. at 273-74. We disagree. First, the example of the buyer is distinguishable from the case at hand. The Roes never claimed a purchase contract, that they paid a purchase price, or that they own the ranch house and the surrounding 214 acres. Further, we find the Roes' acts more closely align with the housekeeper example described in Burns : "The housekeeper who abandons other prospects of establishment in life and renders service without pay upon the oral promise of her employer to give her a life estate in land must find her remedy in an action to recover the value of the service." Id. at 273.
¶ 14 In addition, we conclude there are several plausible explanations for the Roes' acts, including an at-will tenancy arrangement in which the Roes lived on the Ranch and, rather than pay rent, worked for Valer and Josiah. Alternatively, the Roes' $155,000 contribution to the house could have been a down payment on a purchase contract or a purchase option, with the $155,000 being applied toward the ultimate purchase price. It is also plausible the Roes had a lease arrangement in which the $155,000 and the value of their work on the Ranch were applied toward lease payments over a span of several years. In sum, the Roes' acts could be consistent with these or other plausible explanations and thus are not sufficient to constitute part performance.
¶ 15 We thus conclude that, as a matter of law, the Roes' alleged acts of part performance by themselves are not unequivocally referable to a contract for a life estate. The statute of frauds, therefore, bars the Roes' life estate claim. See § 44-101.
Indemnification
¶ 16 Valer also appeals from the trial court's ruling that Josiah has no obligation to defend and indemnify her against the Roes' life estate claim. In denying Valer's pretrial motion for summary judgment, the court considered extrinsic evidence, and concluded the Settlement's indemnification provisions were not "so clearly written that they can only be supported by one party's interpretation" and that the intent of the parties raised questions requiring resolution at trial. The interpretation of a contract, including "whether [it] is reasonably susceptible to more than one interpretation[,] is a question of law, which we review de novo." Grosvenor Holdings, L.C. v. Figueroa , 222 Ariz. 588, ¶ 9, 218 P.3d 1045 (App. 2009) ; see also Taylor v. State Farm Mut. Auto. Ins. Co. , 175 Ariz. 148, 158-59, 854 P.2d 1134, 1144-45 (1993) ("Whether contract language is reasonably susceptible to more than one interpretation so that extrinsic evidence is admissible is a question of law for the court.").
¶ 17 "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." Grosvenor Holdings, 222 Ariz. 588, ¶ 9, 218 P.3d 1045. In determining the parties' intent, courts must decide what evidence is admissible in the interpretation process, bearing in mind that the parol evidence rule allows extrinsic evidence to interpret, but not to vary or contradict the terms of the contract. Taylor , 175 Ariz. at 152, 854 P.2d at 1138. Further, it remains "[a] general principle of contract law ... that when parties bind themselves by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written." Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C. , 213 Ariz. 83, ¶ 12, 138 P.3d 1210 (App. 2006). Thus, "[w]here the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto."
*575 Goodman v. Newzona Inv. Co. , 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966) ; see also Grosvenor Holdings, 222 Ariz. 588, ¶ 9, 218 P.3d 1045 ; Mining Inv. Grp., LLC v. Roberts , 217 Ariz. 635, ¶ 16, 177 P.3d 1207 (App. 2008). In addition, courts must avoid an interpretation of a contract that leads to an absurd result. See Aztar Corp. v. U.S. Fire Ins. Co. , 223 Ariz. 463, ¶ 48, 224 P.3d 960 (App. 2010).
¶ 18 Section 22(f) of the Settlement provides:
REPRESENTATIONS RE: LIENS AND ENCUMBRANCES. Each of the Parties represents that he or she has not created or been responsible for and is not aware of any other persons creating any liens or encumbrances on the title of any property which is being confirmed or assigned pursuant to this Agreement which are not known to the other Party or Parties. If, notwithstanding this paragraph, a Party has caused a lien or encumbrance to be placed on property assigned to the other in this Agreement, then the Party causing such a lien or encumbrance to be created shall promptly remove or pay it as his or her sole expense. Specifically, except as specifically disclosed in this Agreement, Josiah represents that there are no life estates, leasehold interests, or leases of any kind or nature that burden any of the real property awarded to Valer, including, without limitation, any life estates or leasehold interests to Dan Roe or Mr. Congdon and/or his spouse. (Second emphasis added.)
The Settlement also provides in § 3:
a. INDEMNIFICATION/THIRD PARTY CREDITORS. The parties acknowledge that this Agreement does not necessarily bind third party creditors. However, the requirement to pay any Obligation, or be responsible therefor, wherever that language occurs in this Agreement, requires a Party to pay such Obligation and to indemnify and defend the other Party or Parties and hold the other Party or Parties ... free and harmless therefrom, including any attorney's fees and all expenses, settlement payments, fees and costs in connection with such apportionment of Obligations. In the event a claim is brought by a third party creditor against either of the parties for an Obligation for which another Party is liable, either independently or jointly and severally, the Party who is liable for such Obligation under this Agreement shall, in the case of an independent Obligation, indemnify, defend and hold harmless the other Party or Parties for such Obligation, including attorneys' fees and costs ... for any failure to do so.
b. JOSIAH'S OBLIGATIONS. Except as otherwise provided in this Agreement, Josiah shall pay and be responsible for ...
i. All Obligations of any kind or nature that Josiah has personally incurred at any time, whether individually or jointly with a third party, any legal entity, or Valer, that remain unpaid except as otherwise specifically assigned to Valer.
....
viii. All existing Obligations in connection with ... [El Coronado Ranch & Cattle Company L.L.C., the Valer-owned entity that owns the Ranch] ... except insofar as such Entity Obligations are specifically assigned to Valer in this Agreement.
Furthermore, § 2(u)(ii) includes a list in which Josiah disclosed all obligations, other than those specifically disclosed as such elsewhere in the Settlement, that could "affect, impact or encumber in any manner" any of the assets awarded to Valer. The list did not include a life estate to the Roes and there is no mention of a life estate anywhere in the Settlement other than Josiah's specific representation in § 22(f) that none exists.
¶ 19 On appeal, Valer argues she is entitled to judgment as a matter of law because the Settlement clearly and unambiguously requires Josiah to defend and indemnify her. Specifically, she asserts the last sentence of § 22(f) requires Josiah to defend and indemnify her against the Roes' life estate claim because Josiah specifically represented that no life estate existed and did not *576 disclose that such life estate existed in § 2(u)(ii). Further, Valer argues Josiah accepted all obligations in connection with the Ranch in § 3(b) and that he must indemnify her pursuant to § 3(a). According to Valer, given its clear and unambiguous provisions, the Settlement is not reasonably susceptible to any interpretation other than that Josiah must defend and indemnify her in connection with the Roes' claim. She also argues the trial court erred by admitting parol evidence to vary and contradict the Settlement's plain terms.
¶ 20 Josiah, on the other hand, argues the third sentence of § 22(f) must be read as being modified by a clause in the first sentence of the same section: "which are not known to the other Party." Under Josiah's interpretation, § 22(f) only requires him to defend and indemnify Valer against liens and encumbrances which are not known to her . And, according to Josiah, Valer was aware during the settlement negotiations that both Josiah and Valer "had made a verbal promise of a 'life estate' to the Roes." Thus, Josiah argues the court was correct in finding the Settlement is reasonably susceptible to his interpretation and in admitting parol evidence to interpret the Settlement. We disagree.
¶ 21 As noted, even after Taylor , when the terms of a contract are clear and unambiguous, there is no room for interpretation, and we must give effect to its terms. Grosvenor Holdings , 222 Ariz. 588, ¶ 9, 218 P.3d 1045 ; see also Mining Inv. Grp. , 217 Ariz. 635, ¶ 16, 177 P.3d 1207 ; Grubb & Ellis , 213 Ariz. 83, ¶ 12, 138 P.3d 1210. Here, when read together, §§ 3(a), 3(b), and 22(f) of the Settlement clearly and unambiguously require Josiah to defend and indemnify Valer in the event he has caused a lien or encumbrance to be placed on property awarded to her in the Settlement. Further, the third sentence of § 22(f) contains a clear representation by Josiah that "there are no life estates, leasehold interests, or leases of any kind or nature that burden any of the real property awarded to Valer," except as specifically disclosed in the Settlement. The same sentence contains Josiah's specific disclaimer of any life estate in favor of Dan Roe.
¶ 22 It is true that Arizona has adopted a permissive approach to the parol evidence rule, Long v. City of Glendale , 208 Ariz. 319, ¶ 27, 93 P.3d 519 (App. 2004), allowing, as noted, extrinsic evidence to aid in contract interpretation. Taylor , 175 Ariz. at 152, 854 P.2d at 1138. Our supreme court has explained that, when faced with the question of whether to admit extrinsic evidence, a judge should "first consider[ ] the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." Id. at 154, 854 P.2d at 1140. If the offered evidence varies or contradicts the terms of the contract, however, the parol evidence rule precludes it. Id. at 152, 854 P.2d at 1138. In other words, "even under Arizona's more permissive approach to the parol evidence rule, a proponent of parol evidence cannot completely escape the confines of the actual writing." Long , 208 Ariz. 319, ¶ 32, 93 P.3d 519.
¶ 23 Here, the trial court could properly consider extrinsic evidence to determine whether the Settlement was reasonably susceptible to Josiah's interpretation. See Taylor , 175 Ariz. at 154-55, 854 P.2d at 1140-41. The court considered extrinsic evidence from both Valer and Josiah in support of their respective interpretations of the Settlement. Josiah's evidence consisted of testimony and documents purporting to show Valer was aware of the life estate allegedly promised to the Roes. But that evidence varies and contradicts the plain terms of the Settlement, which, as discussed, require Josiah to defend and indemnify Valer against the Roes' claim. Therefore, we conclude the court erred in admitting extrinsic evidence to contradict the Settlement's terms. Taylor, 175 Ariz. at 152, 854 P.2d at 1138 ("parol evidence rule prohibits extrinsic evidence to vary or contradict" contract).
¶ 24 Moreover, "[i]t is a cardinal rule of contract interpretation that we do not construe one term of a contract to essentially render meaningless another term." Aztar , 223 Ariz. 463, ¶ 56, 224 P.3d 960. Josiah's interpretation of § 22(f), which would have the words "which are not known to the other *577 Party" relieve him of the obligation to defend and indemnify Valer in connection with the Roes' life estate claim, would render meaningless the following provisions: (1) Josiah's representations in § 22(f) that there were no liens or encumbrances other than those specifically disclosed in the Settlement and that there was no life estate; (2) the list of encumbrances that Josiah did disclose in § 2(u)(ii); (3) the indemnity provision in § 3(a); and (4) Josiah's acceptance of responsibility for obligations in connection with the Ranch in § 3(b). It is our duty to "adopt a construction of a contract which will harmonize all of its parts, and apparently conflicting parts must be reconciled, if possible, by any reasonable interpretation." U.S. Insulation, Inc. v. Hilro Constr. Co. , 146 Ariz. 250, 259, 705 P.2d 490, 499 (App. 1985). The only reasonable interpretation of the Settlement is that Josiah must defend and indemnify Valer against all claims in relation to the Ranch that are not specifically disclosed in the agreement, including the Roes' life estate claim.
¶ 25 The trial court erred in finding the Settlement was reasonably susceptible to more than one interpretation. We conclude the Settlement requires Josiah to defend and indemnify Valer against the Roes' life estate claim.
Attorney Fees
¶ 26 Valer seeks attorney fees pursuant to Rule 21, Ariz. R. Civ. App. P., under A.R.S. § 12-1103(B) (against the Roes), § 22(o) of the Settlement (against Josiah), and A.R.S. § 12-341.01 (against both the Roes and Josiah). Although a prevailing party may recover attorney fees in quiet title actions under § 12-1103(B), Mariposa Dev. Co. v. Stoddard , 147 Ariz. 561, 565, 711 P.2d 1234, 1238 (App. 1985), and Valer counterclaimed to quiet title to the Ranch, the action underlying this litigation arises from an alleged contract. Therefore, we award Valer reasonable attorney fees against the Roes under § 12-341.01.[2] Further, we award Valer reasonable attorney fees against Josiah under § 22(o) of the Settlement. Lastly, as the prevailing party, Valer is entitled to taxable costs pursuant to A.R.S. § 12-341, upon compliance with Rule 21(b), Ariz. R. Civ. App. P.
Disposition
¶ 27 For the reasons above, we reverse the trial court's judgment awarding a life estate to the Roes, and its judgment in favor of Josiah on Valer's indemnification claim.[3]

The Settlement awarded ownership and control of Cuenca Los Ojos Foundation Trust, El Coronado Ranch & Cattle Co. L.L.C., and El Coronado Ranch L.L.C. to Valer.

Although § 12-1103(B) ordinarily provides the exclusive basis for attorney fees in quiet title actions, see Lewis v. Pleasant Country, Ltd. , 173 Ariz. 186, 195, 840 P.2d 1051, 1060 (App. 1992) ; Lange v. Lotzer , 151 Ariz. 260, 262, 727 P.2d 38, 40 (App. 1986), we conclude Valer may recover under § 12-341.01 in this instance, because her quiet title action was a counterclaim to the Roes' life estate claim. See ML Servicing Co. v. Coles , 235 Ariz. 562, ¶ 30, 334 P.3d 745 (App. 2014) (meaning of "arises out of contract" is broad for purpose of attorney fees under § 12-341.01 ). Moreover, Valer's counterclaim to quiet title and the Roes' life estate claim were "so intertwined as to be indistinguishable," and in our discretion, we award attorney fees under § 12-341.01. See Zeagler v. Buckley , 223 Ariz. 37, ¶ 7, 219 P.3d 247 (App. 2009). Lastly, even if Valer's quiet title counterclaim did not arise out of contract or was not intertwined with the Roes' life estate claim, we could award attorney fees under § 12-1103(B) because she complied with that statute's requirements.

On appeal, Valer also argues the trial court erred by misapplying disclosure and evidence rules, allowing Josiah's counsel to vouch for his client, and holding an ex parte meeting with the jury, the Roes, and Josiah. In light of our reversal on both the life estate and indemnification claims, we need not reach these issues.