NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SKIPTON HOLDINGS, LLC, et al., *Plaintiffs/Appellants*,

*v.*

9995759 ENTERPRISES, LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0165
FILED 2-20-2024

Appeal from the Superior Court in Maricopa County
No.  CV2020-012731
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Poli Moon & Zane PLLC, Phoenix
By Lawrence R. Moon, Michael N. Poli
*Counsel for Plaintiffs/Appellants*

Sacks Tierney PA, Scottsdale
By Steven R. Beeghley, Michael J. Harris
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Andrew M. Jacobs joined.

---

**P A T O N**, Judge:

¶1      Appellants Skipton Holdings, LLC and Skipton & Associates, Inc. (collectively "Skipton") challenge the superior court's grant of summary judgment on their claims against Appellees 9995759 Enterprises, LLC, Brain Mind Health, LLC, and Scott and Barbara Hepburn (collectively "Enterprises"). For the reasons below, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2      This appeal involves three adjacent commercial parcels in Scottsdale. All three parcels are subject to a 1996 Reciprocal Access and Easement Agreement (the "Agreement"), which provides for certain "perpetual, non-exclusive easements for use by the Owners of the Parcels . . . and their respective successors, assigns, invitees and permitees." The Agreement establishes the following easements (the "Easements"):

- "for purposes of ingress and egress to and from the Parcels";

- "for ingress and egress to and from the Parcels, and for parking . . . upon all portions of the Parcels . . . designated for vehicular entrances, exits, driveways and parking [as] shown on the Site Plan";

- "for maintenance of such landscaping as may hereinafter be installed within any Parcel";

- "a temporary construction easement for the limited purpose of paving, constructing and striping any vehicular entrances, exits, driveways and parking areas and landscaping"; and

- "for the purpose of maintenance of any vehicular entrances, exits, driveways, parking areas and landscaping upon such Owner's respective Parcels."

Section 8(A) of the Agreement provides that each parcel owner would be responsible for "all costs and expenses of the maintenance of those Improvements located on such Owner's respective parcel." But in Section 8(B), the then-owners agreed "to share in the expenses for the following maintenance: landscaping, water feature, parking lot, garbage removal, outside window cleaning, exterior bathrooms, painting and any other activities which relate to the Easements, including, but not limited to, the items described in Section [8(A)] above."

¶3        In 2012, Skipton purchased Parcel 3. In 2018, Enterprises, which is controlled by the Hepburns, purchased Parcel 1, which has a standalone building with four exterior restrooms. Skipton arranged and paid for cleaning and maintenance of the Parcel 1 exterior restrooms, and its patrons used them.

¶4        Two of the exterior restrooms had water leaks in 2018 and 2019. Shortly thereafter, Enterprises placed locks on all four exterior restrooms. In June 2019, Skipton demanded that Enterprises provide keys for the exterior bathrooms. Skipton also requested "a full accounting of all expenses [Enterprises had] incurred . . . that are to be shared pursuant to Section 8(B) of the [Agreement], for the years 2018 and 2019."

¶5        Skipton sued approximately one year later, alleging Enterprises breached the Agreement by, among other things, "locking the common area bathrooms without providing . . . a key for each bathroom" and "failing to provide an adequate accounting . . . of expenses" for shared maintenance items. Skipton alleged four claims: breach of the covenant of good faith and fair dealing, declaratory relief, private nuisance, and tortious interference with the easement. Enterprises counterclaimed for declaratory relief, breach of the Agreement, and breach of the covenant of good faith and fair dealing. It alleged that "[w]ithout [its] approval, permission, or knowledge, Skipton . . . hired a contractor who performed significant demolition work" that caused the bathrooms "to require reconstruction to be functional and safe for use." Enterprises also alleged, following an August 2021 leak, that all four exterior bathrooms were unsafe for use and Skipton had refused to contribute towards repairs.

¶6        Enterprises moved for summary judgment on Skipton's claims and its declaratory relief counterclaim, contending the Agreement did not establish any easements to the exterior restrooms. Skipton cross-moved for summary judgment on Enterprises' declaratory relief counterclaim, arguing the owners are "obligated to share the cost of maintaining the exterior restrooms" because "the exterior restrooms are subject to the same access and use easement as the driveways, parking lot

and pedestrian areas." Skipton offered declarations from past owners, including the original Parcel 1 owner, that the exterior restrooms had always been available for "common usage." Skipton also noted that Enterprises' motion "[did] not address [its] allegation that they failed to provide an adequate accounting of their sharable expenses" but conceded Enterprises had provided "an unsubstantiated list of expenses alleged . . . to be eligible for sharing under the Easement Agreement."

¶7 The superior court granted Enterprises' motion and denied Skipton's cross-motion. The superior court found it was "undisputed that the Easement Agreement does not expressly include an easement for use of the Exterior Bathrooms." It then turned to Section 8(B) of the Agreement, as discussed in *supra* ¶ 2:

> [T]he better reading of the phrase 'any other activities which relate to the Easements' is as a catch-all meant to apply to any expenses related to the 'certain reciprocal easements and rights in and to all vehicular entrances, exits, driveways and parking areas now or hereafter existing on the [parcels]', which are set forth more fully in Paragraphs 1(A)-(E) of the Easement Agreement, none of which contain . . . an easement to the exterior bathrooms.

The superior court also directed Enterprises to give notice as to whether it would pursue its remaining counterclaims.

¶8 One week after the superior court issued its ruling, Skipton moved for leave to file a second amended complaint. In its proposed amendments, Skipton sought "an order extending the Court's Ruling to the electrical, sewer and fire suppression equipment and facilities situated on or crossing through Parcel 3 that also serve Parcel 1 and are not mentioned in the easement descriptions" that would allow Skipton to "cap, sever or otherwise disconnect or terminate the operation of such equipment and/or facilities." The superior court denied leave to amend, finding Skipton "acted with undue delay and engaged in dilatory action by filing the Motion for Leave after the Court issued the [summary judgment] Ruling."

¶9 Enterprises withdrew its remaining counterclaims. The superior court then entered a final Arizona Rule of Civil Procedure ("Rule") 54(c) judgment. This appeal followed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

**DISCUSSION**

¶10   In determining whether either party is entitled to summary judgment on cross-motions, we review questions of law de novo and "review the facts in a light most favorable to the party against whom summary judgment was granted." *In re Est. of Podgorski*, 249 Ariz. 482, 484, ¶ 8 (App. 2020). Summary judgment is warranted only if there are no genuine issues of material fact and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

¶11   We review issues of contract interpretation de novo. *VEREIT Real Est., LP v. Fitness Int'l, LLC*, 255 Ariz. 147, 152, ¶ 11 (App. 2023). Our purpose in interpreting a contract is to ascertain and enforce the parties' intent. *Terrell v. Torres*, 248 Ariz. 47, 49, ¶ 14 (2020). To determine the parties' intent, "we look to the plain meaning of the words as viewed in the context of the contract as a whole." *Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 242 Ariz. 252, 255, ¶ 14 (App. 2017) (citation omitted). If the contract language is clear, we give effect to it as written. *VEREIT*, 255 Ariz. at 152, ¶ 11.

I.  **The superior court properly granted summary judgment to Enterprises.**

  A. **Exterior bathrooms were not included within the scope of the Easements.**

¶12   Skipton relies on Section 8(B) of the Agreement to contend the exterior restrooms were included within the scope of the Agreement's easements. As discussed above, in Section 8(B) the then-owners agreed to "share in the expenses" for maintenance of, among other things, the exterior restrooms and "any other activities which relate to the Easements."

¶13   Skipton focuses on the word "other," contending its use suggests "that all of the enumerated prior activities [in Section 8(B)] necessarily 'relate to the Easements'" listed in Section 1 and, therefore, argues the exterior restrooms are an "activit[y] which relate to the Easements." We reject this argument for two reasons. First, the Section 8(B) list includes things unrelated to any of the Section 1 Easements, such as "outside window cleaning" and "painting." Second, none of the Section 1 Easements reach or relate to the exterior restrooms. Indeed, the Agreement's recitals—the then-owners' express declarations of intent— only state a "desire to create certain reciprocal easements" for "all vehicular entrances, exits, driveways and parking areas now or hereafter existing on the property." If the then-owners wanted to create easements to and from

the Parcel 1 exterior bathrooms, they could have easily done so. *See Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267, ¶ 24 (2008) ("When 'the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not . . . add something to the contract which the parties have not put there.'") (citation omitted).

**¶14**        Skipton also contends interpreting the Agreement to not establish easements to the exterior restrooms would lead to an absurd result—specifically, that it and the Parcel 2 owners would have "to pay for the maintenance and upkeep of the four exterior bathrooms . . . without any corresponding benefit to [use] them." *See Roe v. Austin*, 246 Ariz. 21, 27, ¶ 17 (App. 2018) ("[C]ourts must avoid an interpretation of a contract that leads to an absurd result."). But Skipton cites no evidence to show that it has paid any exterior restroom maintenance expenses or that Enterprises has demanded such expenses since the exterior restrooms were locked in 2019.

> **B.      The Agreement is not reasonably susceptible to Skipton's interpretation.**

**¶15**        Skipton next contends the Agreement is reasonably susceptible to an interpretation that would grant easement rights to the Parcel 1 exterior bathrooms. On that basis, it contends the superior court "may, and should, consider extrinsic evidence."

**¶16**        Generally, the parol evidence rule bars consideration of evidence that varies or contradicts the terms of a written contract. *Roe*, 246 Ariz. at 28, ¶ 22. Extrinsic evidence is admissible to discern the parties' intended meaning if the superior court decides that the contract language is "reasonably susceptible" to the proponent's interpretation. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993) (citation omitted).

**¶17**        Skipton first cites declaration testimony from prior Parcel 1 owner Randall Rush and prior Parcel 2 owner Frank Sorrentino that it contends established a course of dealing under which "the exterior restrooms were intended to be shared by all three Parcel Owners." The superior court considered their testimony but ruled it was irrelevant to Skipton's easement claim. We agree because neither Rush nor Sorrentino testified that the Agreement created an easement to the exterior restrooms. Rush instead testified the exterior restrooms "during [his] time as owner [were] always considered a common usage" for all three parcels, and Sorrentino testified it was his "understanding that the exterior bathrooms situated on Parcel 1 are to be open for use by the employees and patrons of all the businesses located on the property." While this testimony suggests

employees and patrons of the businesses on Parcels 2 and 3 used the Parcel 1 exterior restrooms, it does not suggest the Agreement conferred an easement to access those restrooms.

**¶18** Skipton next cites the declaration of Larry Coben, who was involved in drafting the Agreement. Coben testified it was his intent to "provide an easement" for Parcel 2 and 3 owners "to access and use [the Parcel 1] exterior restrooms" when he signed the Agreement. But the Agreement did not establish any such easement. Indeed, Skipton conceded in its cross-motion that the Agreement "does not expressly state that all owners shall have the right to use those restrooms." Coben's declaration therefore contradicts the Agreement's terms and was properly excluded. *See Briskman v. Del Monte Mortg. Co.*, 10 Ariz. App. 263, 266 (1969) ("[I]n reaching its decision as to the granting of a motion for summary judgment, the court should exclude from its consideration extrinsic evidence which would violate the parol evidence rule.").

### C. The Rule 54(c) judgment resolved Skipton's accounting claim.

**¶19** Skipton next contends the superior court did not resolve its claim for an accounting of past shared expenses. The Rule 54(c) judgment states that "summary judgment is entered in Defendants' favor *on all claims* in Plaintiffs' First Amended Complaint, and Plaintiffs' First Amended Complaint is dismissed with prejudice, with Plaintiffs to take nothing thereby." (Emphasis added.) This language is consistent with Enterprises' proposed form of the judgment, to which Skipton did not object. *See* Ariz. R. Civ. P. 58(a)(2)(B). Skipton also contends the superior court "did not address this issue in its summary judgment ruling," but the judgment controls over the superior court's earlier minute entry. *See In re Marriage of Zale*, 193 Ariz. 246, 251, ¶ 18 (1999).

**¶20** Skipton also argues Enterprises was obligated to provide an accounting under the implied duty of good faith and fair dealing, relying on *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784 (2008). "[T]he implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into." *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 385 (1985), *superseded by statute on other grounds, as stated in Powell v. Washburn*, 211 Ariz. 553, 560, ¶ 29 (2006).

**¶21** *McClain* involved a commercial lease that gave the landlord "exclusive management and control over [common] expenses" and obligated it to provide "a reasonably detailed statement of the expenses."

159 Cal. App. 4th at 798, 808. Citing other California case law holding that the implied covenant accords the other party the right to an accounting "when two parties enter into an agreement for the sharing of profits that accords one party exclusive access and control over financial records," the court determined McClain was "entitled to verify that [the common] expenses were, in fact, incurred and that the listed amounts are accurate." *Id.* at 806, 808.

**¶22**　　　*McClain* is distinguishable because the Agreement does not give Enterprises exclusive management or control of the Section 8(B) shared expenses and does not require Enterprises to provide a statement or accounting of those expenses. Skipton thus did not show that Enterprises breached the implied covenant of good faith and fair dealing. *See Rawlings v. Apodaca*, 151 Ariz. 149, 155 (1986) (stating the implied covenant does not entitle a party "to protection in excess of that which is provided for in the contract, nor to anything inconsistent with the limitations contained in the contract").

## II.　The superior court correctly denied Skipton's motion for leave to file a second amended complaint.

**¶23**　　　Skipton also challenges the denial of its motion for leave to file a second amended complaint after Enterprises prevailed on summary judgment. "Leave to amend must be freely given when justice requires." Ariz. R. Civ. P. 15(a)(2). "A court may deny leave to amend if it finds 'undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments or undue prejudice to the opposing party.'" *Carranza v. Madrigal*, 237 Ariz. 512, 515, ¶ 13 (2015) (quotation omitted) (citation omitted). Generally, we review a denial of leave to amend for an abuse of discretion. *Id.*

**¶24**　　　As stated above, the superior court found both undue delay and dilatory motive. It determined that "[i]f there was a legitimate dispute regarding the underground electrical and sewer lines, the fire suppression system, and the mailbox, then [Skipton] should have raised the dispute in [its] original Complaint or their First Amended Complaint--and most certainly before the Court ruled against them on all the contested issues in this action." It also determined that Skipton was "attempting to use the [summary judgment] Ruling as a pretense for cutting off [Enterprises'] electricity, sewer, and fire suppression lines, as well as access to [Enterprises'] mailbox."

**¶25**　　　On appeal, Skipton argues it "did not want the relief sought in the proposed amended complaint" before the superior court issued its

summary judgment ruling, thereby conceding there was no legitimate dispute regarding these matters beforehand. Skipton also contends it only became necessary to seek additional relief "when the prior course of dealing was determined by the [superior] court to not be binding." There is no course of dealing evidence in the record relating to underground electrical or sewer lines, the fire suppression system, or Enterprises' mailbox. Thus, allowing Skipton to amend would have required, at a minimum, that the superior court reopen the case to allow additional discovery and disclosure. We cannot say the superior court abused its discretion in denying Skipton's motion. *See Carranza*, 237 Ariz. at 515, ¶ 13 ("Denial of leave to amend is 'a proper exercise of the court's discretion when the amendment comes late and raises new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected, thus requiring delay in the decision of the case.'") (citation omitted).

## III.    Attorneys' Fees and Costs on Appeal

**¶26**          Enterprises requests attorneys' fees and costs under Section 12 of the Agreement:

> In any legal or equitable proceeding for the enforcement of any of the terms, provisions, conditions, covenants or agreements contained herein, or for damages for the breach of any of the terms, provisions, conditions, covenants or agreements contained herein, the losing party shall pay the attorneys' fees and court costs of the prevailing party.

We grant Enterprises its reasonable attorneys' fees and costs as the prevailing party, subject to its compliance with Arizona Rule of Civil Appellate Procedure 21(b).

## CONCLUSION

**¶27**          We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

9