NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HIGH DESERT HEALING, LLC, et al.,
*Plaintiffs/Appellees*,

*v.*

CEC 141202761, LLC,
*Defendant/Appellant.*

No. 1 CA-CV 23-0195
FILED 2-29-2024

Appeal from the Superior Court in Maricopa County
No.  CV2021-016161, CV2021-053708
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Conant Law Firm, PLC, Phoenix
By Paul A. Conant, Melissa A. Emmel
*Counsel for Plaintiffs/Appellees*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, John S. Bullock
*Counsel for Plaintiffs/Appellees*

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Defendant/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Judge Angela K. Paton joined.

_____

**B R O W N**, Judge:

¶1        CEC 141202761, LLC ("CEC") appeals the superior court's ruling that CEC breached a lease ("Lease") by unreasonably withholding its consent of High Desert Healing, LLC's ("High Desert") assignment request.  Because CEC has shown no error, we affirm.

## BACKGROUND

¶2        In March 2018, High Desert leased a commercial property from CEC.  At the time, High Desert was a wholly owned subsidiary of Harvest Dispensaries, Cultivations & Productions Facilities, LLC ("Harvest DCP").  The Lease term was 15 years and permitted High Desert to operate a medical marijuana dispensary on the property.

¶3        In May 2021, Harvest DCP's parent company, Harvest Health & Recreation, Inc. ("the Parent Company") entered an agreement to be acquired by Trulieve Cannabis Corp.  Because the acquisition would transfer more than 50% of the voting control in Harvest DCP, it would trigger the assignment clause under the Lease and thus require CEC's consent.  Sections 10 and 10.1 explain the procedure for requesting an assignment and the ramifications for failing to do so:

> **10. Assignment and Subletting.** Lessee may not assign . . . this Lease . . . without having notified Lessor in writing of the terms of the Assignment (the "**Assignment Request**") and obtaining prior written approval of Lessor, which approval shall not be unreasonably withheld, delayed or conditioned . . . Any attempt at an Assignment without Lessor's prior written consent shall be null and void, confer no rights upon a third person, and shall, at the option of Lessor, be a Breach pursuant to Section 11.1(b) without the necessity of any notice or cure period, in which case Lessor may terminate this Lease . . . . A Change of Control shall constitute an Assignment requiring Lessor's consent . . . the term "**Change of Control**"

means the transfer of more than 50% of the voting control of Lessee or Guarantor.

. . .

10.1 **Additional Terms and Conditions Applicable to an Assignment.**

. . .

(e) Each Assignment Request shall be in writing, accompanied by information relevant to Lessor's determination as to the financial and operational responsibility and appropriateness of the proposed Assignee, including but not limited to the proposed Assignment terms, together with a fee of $500 as consideration for Lessor's considering and processing said request. Lessee agrees to provide Lessor with such other or additional information and/or documentation as may be reasonably requested.

¶4        On August 6, 2021, High Desert emailed CEC a letter notifying CEC of the pending acquisition and requesting CEC's consent to the assignment. High Desert provided links to Trulieve's publicly available business history and financial information and indicated the transaction would likely occur before the end of 2021. Noting the $500 fee required under Section 10.1(e), High Desert stated it would add $500 to its next rent payment. Awaiting a response, High Desert sent CEC three emails over the next three weeks making similar requests. CEC responded by email on August 31, explaining the $500 fee, which had not been paid, was a prerequisite for consideration of the assignment request. CEC also (1) noted concerns about past due rent, (2) referred to legal issues involving the Parent Company, and (3) questioned whether the leased property could "be seized as part of a 'civil asset forfeiture.'"

¶5        Consistent with its initial letter requesting approval of the assignment, on September 1, High Desert paid the $500 fee to CEC with its monthly rent payment and notified CEC it had done so. A day later, CEC requested detailed financial information about High Desert and Trulieve, which High Desert provided the following day. CEC indicated it would review that information in considering the assignment request.

¶6        On September 29, CEC sent High Desert a letter refusing consent to the August 6, 2021 assignment request. CEC explained in part that the proposed acquisition of the Parent Company would detrimentally

affect the landlord-tenant relationship, noting its "concerns that the additional locations and jurisdictions in which Trulieve operates would" increase CEC's "exposure to state and federal forfeiture laws." The letter did not mention the timing of the $500 fee as a reason for refusing consent to the assignment. In addition, CEC stated it was terminating the Lease, "effective immediately," because Harvest DCP had changed control in 2019, and CEC had not given prior written consent for that assignment.

**¶7**      High Desert sued CEC, seeking in part a declaratory judgment that it had not breached the Lease. In a separate action, CEC moved to evict High Desert. The superior court consolidated the cases and held a four-day bench trial during which six witnesses testified.

**¶8**      The court ruled that High Desert did not breach the Lease, CEC did breach the Lease, and CEC was obligated to approve the assignment and could not evict High Desert. In its detailed ruling, the court found that "[High Desert] sought approval of the assignment to Trulieve consistent with the terms of the Lease. Accordingly, CEC was obligated to act reasonably and in good faith when considering the request for assignment." The court further found that CEC failed to establish that voting control of Harvest DCP transferred before September 29, 2021. It also noted that CEC's purported asset forfeiture concerns were not credible, and that CEC acted in bad faith by claiming High Desert failed to pay rent. The court thus concluded that "CEC unreasonably withheld consent to the assignment."

**¶9**      The court later issued a final judgment that awarded, under the Lease, approximately $150,000 to High Desert for its attorneys' fees and taxable costs. CEC timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**      On appeal from a bench trial, we defer to the superior court's factual findings unless clearly erroneous, but we review its legal conclusions de novo. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). We review issues of contract interpretation de novo. *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 367, ¶ 12 (2017). When interpreting a contract, we aim to determine and effectuate the parties' intent. *Terrell v. Torres*, 248 Ariz. 47, 49, ¶ 14 (2020). In doing so, we construe provisions by their "plain and ordinary meaning," and we consider that meaning "in the context of the entire contract." *Id.* at 50, ¶ 14.

**¶11**     We first note that CEC failed to timely submit the transcripts from the superior court's bench trial.[1]  *See* ARCAP 11(c) (stating that an appellant is responsible for ordering transcripts necessary to consider the issues on appeal).  Thus, to the extent any issue CEC has raised on appeal flows from the court's resolution of factual disputes, we presume the missing transcripts support the court's findings and conclusions.  *See State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003).

**¶12**     The only argument CEC makes on appeal is that by failing to pay the $500 fee simultaneous with its August 6, 2021 written request, High Desert breached the Lease by "attempting an assignment" without CEC's consent, which gave CEC the absolute right to refuse the assignment and terminate the Lease.  CEC asserts that the clause in Section 10.1 requiring that "[e]ach Assignment Request shall be in writing . . . together with a fee of $500 as consideration for Lessor's considering and processing said request" means the $500 fee must be paid simultaneously with the assignment request.  It contends that "together with" means "simultaneously with" and "there is nothing ambiguous or unclear" about it.  On the other hand, High Desert argues that "together with a fee of $500" means that it had to submit both the written request and $500, but those things did not have to happen simultaneously.

**¶13**     The superior court did not determine whether failure to pay the $500 with the assignment request simultaneously was a breach, but we need not reach that issue because the court found that it was "not material" given that (1) High Desert explained in the August 6, 2021 request that it would pay the $500 fee with September rent, (2) it paid the $500 fee as promised, (3) the delayed payment did not prevent CEC from considering the request, and (4) CEC never indicated it would not consider the request without receiving the $500 fee.  For CEC to prevail on appeal, it must show these findings were clearly erroneous.  Yet, CEC does not challenge these findings on appeal, nor could it without providing the trial transcripts.

**¶14**     Instead, CEC argues the superior court should not have analyzed whether the breach was material.  Under CEC's theory, High Desert's August 6, 2021 request was not merely an improper assignment request, but an "attempt" to assign.  And under the Lease: "Any attempt at an Assignment without Lessor's prior written consent shall be null and void, confer no rights upon a third person, and shall, at the option of Lessor,

---

[1]     We granted High Desert's motion to strike the trial transcripts from the appellate record because CEC did not file them until after briefing and oral argument.

be a Breach pursuant to Section 11.1(b) without the necessity of any notice or cure period, in which case Lessor may terminate this Lease . . . ." Therefore, according to CEC, this provision "trumps any language stating that consent to assignment 'shall not [be] unreasonably withheld'" and what the "trial court regards as material or immaterial is not relevant."

¶15        CEC, however, does not point to anywhere in the record showing that it raised this "attempt at an Assignment" issue in the superior court, and CEC's appellate counsel conceded at oral argument that the issue was raised for the first time on appeal. It is therefore waived. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.").

¶16        Waiver aside, we decline to adopt CEC's construction of the "attempt at an Assignment" provision. The Lease does not define "attempt at an Assignment;" however, to request an assignment under the Lease, "Lessee" must notify "Lessor in writing of the terms of the Assignment," which High Desert did on August 6, 2021. If that request itself is considered "an attempt at an Assignment," it would be impossible to request an assignment without breaching the Lease and allowing CEC to terminate it. Thus, CEC's interpretation renders the portion of the Lease dedicated to requesting an assignment meaningless. *See Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 476, ¶ 45 (App. 2010) ("Our reading of one provision of a contract must not render a related provision meaningless.").

¶17        Moreover, if we were to focus only on the "attempt at an Assignment" provision, CEC's interpretation still cannot be reconciled. The provision reads: "Any attempt at an Assignment without Lessor's *prior written consent* shall be null and void . . . ." (emphasis added). If High Desert's August 6, 2021 request for CEC's prior written consent to the assignment is by itself an "attempt at an Assignment without [CEC's] prior written consent," then it would be impossible to obtain "prior written consent," which would also render that language meaningless. *See id.*; *see also Roe v. Austin*, 246 Ariz. 21, 27, ¶ 17 (App. 2018) ("[C]ourts must avoid an interpretation of a contract that leads to an absurd result."). We conclude that High Desert did not attempt an Assignment.

¶18        High Desert requests an award of attorneys' fees incurred on appeal under Section 28 of the Lease, which states that the prevailing party on appeal "shall be entitled to reasonable attorneys' fees." A contractual provision for attorneys' fees will be enforced according to its terms. *Rand*

*v. Porsche Fin. Servs.*, 216 Ariz. 424, 435, ¶ 42 (App. 2007). We therefore award reasonable attorneys' fees to High Desert subject to compliance with ARCAP 21.

## CONCLUSION

¶19 We affirm the superior court's judgment.

